# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**LAMONT ZAMICHIELI,**                         :

                     **Plaintiff**          :      **CIVIL ACTION NO. 3:17-1898**

          **v.**                                :               **(JUDGE MANNION)**

**THERESA DELBALSO,** *et al.,*               :

                **Defendants**              :

## MEMORANDUM

I.     **BACKGROUND**

Plaintiff, Lamont Zamichieli, an inmate formerly confined in the Mahanoy State Correctional Institution (SCI-Mahanoy), Frackville, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1-2). The action proceeds via an amended complaint. (Doc. 47). The named Defendants are the Pennsylvania Department of Corrections (DOC) and the following SCI-Mahanoy employees: Theresa DelBalso, Superintendent; Michael Vuksta, Deputy Superintendent of Centralized Services; Beggs, Deputy Superintendent of Facility Management; Jeanne Macknight, Corrections Centralized Program

---

[1] Plaintiff is currently housed at the Phoenix State Correctional Institution, Collegeville, Pennsylvania.

Management; Lt. Keith Wall; Lt. Brennan; Jane Hinman, Grievance Coordinator; Jamie Lynn Bechtel, Psychology Service Specialist; C/O Dusty Young; Traci Jacobson, Unit Manager; Sgt. Williams, C/O J.E. Murphy; Harry Cardodiskey, RHU Counselor; and Alyssa Menghini, Physician Assistant. Id.

Plaintiff seeks compensatory and punitive damages for claims of First Amendment retaliation, Fourth Amendment violation of bodily privacy, Eighth Amendment sexual abuse, Eighth Amendment deliberate indifference and a violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). Id.

Presently before the Court is Defendant Menghini's motion for summary judgment, Plaintiff's cross-motion for summary judgment and remaining DOC Defendants' motion for summary judgment. (Docs. 71, 82, 87). The motions are fully briefed and are ripe for disposition. For the reasons set forth below, this Court will grant Defendant Menghini's motion for summary judgment based on Plaintiff's Eighth Amendment claim of deliberate indifference and grant DOC Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim, Plaintiff's Eighth Amendment sexual abuse claim and his ADA and RA claims. Plaintiff's Fourth Amendment violation of bodily privacy claim will be permitted to

proceed, as DOC Defendants' motion for summary judgment does not address this claim.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

- 4 -

Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

- 5 -

"The rule is no different where there are cross-motions for summary judgment." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Muhammad v. Martin, No. 3:19-cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." See Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III.   STATEMENT OF MATERIAL FACTS

The Plaintiff has been in DOC custody since January of 2015. (Doc. 73-2, Zamichieli Deposition). He was housed in SCI-Mahanoy from July 2015 to June 2, 2016. Id. When he arrived in prison, he was placed on a

lower tier, lower bunk restriction because he had a seizure disorder and mild scoliosis. Id.

Plaintiff was classified as a mental health inmate and in January 2016 he was housed on a top tier cell in the DTU/RAQ, which houses mental health inmates. Id. He claims that he was deprived of a lower tier bunk from January 20, 2016 through April 10, 2016. Id. Although he claims he was supposed to have a bottom bunk, bottom level housing assignment, he was placed in the top tier housing with a bottom bunk, and ultimately fell off his bed during a seizure. Id. Plaintiff believes that both medical and security were responsible for his bunk assignment, however, he states that he "believe[d] medical is supposed to override any security decisions." Id. However, while housed on the top tier level, Plaintiff admits that his cell only had one bunk and it was a bottom bunk. Id. He believes that Defendant, PA Menghini knew that he should be housed on the bottom tier and did not override Security. Id. Plaintiff never sent PA Menghini an Inmate Request Form stating that he wanted a lower tier cell. Id.

From January to April of 2016, the Plaintiff had numerous seizures, but he had also had seizures consistently prior to that. Id. During that time, he signed up for sick call about twice a week and was seen by medical staff on

other occasions. Id. He asserts that he filed numerous complaints and grievances about what he deemed to be substandard medical treatment. Id.

During this time period, the Plaintiff never went to yard, because he told the guards that he did not want to go down the steps while wearing handcuffs. Id. He also claimed that he was denied the ability to participate in certain programs because he would refuse to go down the stairs while handcuffed, notwithstanding the fact that guards would be present to escort him down the steps. Id.

The Plaintiff accuses several prison officials, starting in February, 2016, of telling him to withdraw his grievances "[b]ecause [he] was complaining too much." Id. Additionally, the Plaintiff also noted that the defendants repeatedly told him not to file grievances about his lower bunk, lower tier status, as it was "not a grievable issue." Id.

From January, 2016 through April, 2016, Plaintiff received twelve (12) misconducts. (Doc. 89-2, Misconduct History). Seven of the misconducts were for sexual harassment and/or indecent exposure. Id. Plaintiff was found guilty on all misconducts. Id.

On March 1, 2016, Plaintiff received Misconduct B882608[2] for sexual harassment and indecent exposure. Id. The Plaintiff claims his cell was searched after he received this misconduct, in retaliation for his filing of grievances. (Doc. 73-2). Although Defendant Wall made the decision to strip search the cell, Defendants Murphy and Williams helped search the cell. Id. The Plaintiff refused to attend the disciplinary hearing on Misconduct B882608 and refused to sign the waiver form. Plaintiff was found guilty of Misconduct B882608.[3] (Doc. 89-2). Pursuant to DC-ADM 801 an inmate may not appeal the results of a hearing he/she refused to attend. Id.

---

[2] Misconduct B882608, issued by Defendant Jacobson, reads as follows:

On the above date and time while conducting a PREA investigation with inmate Zamichieli when [he] exposed his erect penis and began manipulation of his penis in front of this reporting staff member. At that time, I exited the RHU Law Library and terminated the interview. End of report.

(Doc. 89-2 at 29).

[3] The Hearing Examiner found Plaintiff guilty based on the following:

Inmate Zamichieli, in accordance with the DC-801, refused to attend this hearing and refused to sign a waiver – per Officer Willingham. Waiver form witnessed by Officer Willingham and Officer Murphy.

Hearing Examiner believes Unit Manager Jacobson's written report over Inmate Zamichieli's failure to attend this hearing and answer charges that Inmate Zamichieli indecently exposed his erect penis to Unit Manager Jacobson while she was conducting a PREA interview/investigation and the began manipulating his penis, thereby committing the act of sexual

*(footnote continued on next page)*

On March 7, 2016, Plaintiff filed Grievance No. 617411 about the March 1, 2016 strip search of his cell. (Doc. 73-1 at 32, Initial Review Response). On March 22, 2016, Grievance No. 617411 was denied as follows:

> I have reviewed your grievance dated 3/07/16 regarding your allegation of your cell being "stripped" during your PRC hearing. You claim you were placed in the law library and told "someone wanted to speak to you" and a short time later you were removed from the library and placed back into your cell where it had been stripped of your belongings.
>
> You accuse Lt. Wall of ordering this and then go on a long rambling diatribe about retaliation, Deputy Vuksta wanting you to sign off of grievances, misconducts, being denied healthcare, etc., etc.
>
> Mr. Zamichieli, here are the facts concerning your confinement in the RHU, since the New Year of 2016 alone, you have received a MINIMUM of EIGHT misconducts. Numerous ones are regarding sexual harassment of female staff by continued indecent exposure to them. You have also threatened staff, used abusive language to same and disobeyed numerous orders. I spoke to Lt. Wall concerning your allegations and he stated that he in fact DID order your cell stripped as a result of your continuous non-compliant behavior. This is simply another tool we use to gain compliance when repeated misconducts (as in your case) fail to do so. Most of your belongings were returned to you within a few days of this incident. I also checked with medical staff about your allegation of denied healthcare to which

harassment. Hearing Examiner notes that Inmate Zamichieli's actions resulted in the termination of the interview.

A preponderance of evidence exists to support the #25 and #28 charge.

(Doc. 89-2 at 28).

> I was told you never REQUESTED such nor provided any proof of doing so.
>
> As such, I find no grounds for this grievance and it is denied. Any reparations requested by you are also denied.

Id. Plaintiff appealed to the Facility Manager, who upheld, in part, and denied, in part, Plaintiff's appeal, as follows:

> This is my response to your grievance appeal stating you were retaliated by Lt. Wall because he and Deputy Vuksta asked you to sign off on grievances. You also state that your property and mattress were removed from your cell and you had to sleep on the metal bunk for many days and you cite this as cruel and unusual punishment and a violation of your rights.
>
> I spoke to several staff about your grievance appeal. What I find is that no one retaliated against you when you wouldn't sign off on a grievance. Mr. Zamichieli, staff often immediately rectify issues and the approach the inmate who complained about the issue to sign off on the filed grievance. Your refusal to do so did not cause retaliation in the form of property/mattress removal from your cell. The action that prompted that was you hoarding medication and hiding it in your cell. Lt. Wall ordered your property and mattress removed for inspection to find the hidden pills. It is his report to me that you had your items back within 2 days after they were searched. You claim you did not have your mattress for 15 days, but I am on your unit at least once a week and, while we conversed last week, you never mentioned anything about a mattress and I didn't notice it missing. While it would have been a good idea to provide you with a replacement mattress while yours was being searched, I was informed that there were none on the unit. This has been rectified in that Lt. Wall has now ordered and received extra mattresses when one needs to be removed from a cell.
>
> I find that the reasons your property was removed is – ultimately for your safety in the event you hid sufficient amounts of pills in your cell and decided to swallow them all at once. However, a

> replacement would have been better than waiting 2 days for a mattress. As I explained, procedures were implemented to avoid this circumstance on our end. On your end, however, your compliance with institutional rules and working with staff instead of against us would be beneficial to your progress and release from the DTU back to GP.
>
> As a result of my findings, I uphold in part and deny in part your grievance appeal.

(Doc. 73-1 at 33, Facility Manager's Appeal Response). Plaintiff's appeal to final review was upheld the Facility Manager's Appeal Response as follows:

> You state in your grievance that on 3/1/16 you were verbally abused by all staff sitting in the PRC. You state that after the PRC hearing you were placed in the law library and told that someone wanted to speak with you. You state that during that time, your cell was stripped of your belongings. You state that you were told that Lt. Wall had officers take all of your property/mattress out of your cell. You state that when you talked to Lt. Wall about it, you state that he said, "I told you to sign off on grievances." An investigation was conducted regarding your allegations. The record reflects that Lt. Wall was interviewed regarding your allegations. Lt. Wall reported that he did order your cell to be stripped as a result of your continuous non-compliant behavior and for your own safety (hiding pills in your cell). The record reflects that you should have been provided a replacement mattress but at that time, there were not available. The record reflects that the response adequately addressed what occurred and there is nothing further to add to the responses provided.

(Doc. 73-1 at 31, Final Appeal Decision).

Plaintiff filed a PREA complaint against Defendant Bechtel because she did not alert him that she was coming, and he was naked in his cell cleaning himself. (Doc. 73-2). Bechtel told him that he had a "large weapon"

and encouraged him to masturbate for her, while she watched from the cell door. Id. He masturbated for Bechtel at his cell door about 5 times until he decided to report it. Id. Plaintiff filed Grievance Nos. 614210[4], 614368[5] and

_____

[4] On March 14, 2016, Grievance No. 61420 was denied as frivolous as follows:

On 2/21/16 you filed a grievance stating that Ms. Bechtel was disrespectful and threatened you. In accordance with DOC ADM 804, Inmate Grievance System, I have reviewed the matter.

Ms. Bechtel denies these allegations and states that she never asked you to withdraw a grievance, nor did she threaten you. She has told you that you need to be fully dressed and your hands need to be visible. Given your history of exposing yourself and sexually harassing the female staff to include Ms. Bechtel, it is reasonable that she would request these safeguards when meeting with you.

In your grievance you ask for extra counseling to deal with your issues, but you have refused your last two sessions out-of-cell with psychology and psychiatry.

This grievance is denied and considered frivolous based on the fact that you have filed numerous grievances on the same or similar issues with Ms. Bechtel. You have received an answer to these issues and the administrative staff have reviewed the matter. In addition, your record also reflects a consistent pattern of exposing yourself and sexually harassing the female staff.

(Doc. 73-1 at 41).

[5] On March 11, 2016, Grievance No. 614368 was denied as frivolous as follows:

Between 1/15/16 and 2/17/26 you filed several grievances stating that you are not receiving adequate mental health care and Ms. Bechtel is not

*(footnote continued on next page)*

- 13 -

618411[6] regarding Defendant Bechtel. (Doc. 73-1 at 30, 40, 41). All were

appealed to final review and all were unfounded. Id.

_____

professionally doing her job. In accordance with DC ADM 804, Inmate
Grievance System, I have reviewed the matter.

There is no separation on file between you and Ms. Bechtel and as the
assigned DTU psychologist she will make rounds on the unit and speak with
you. There is no time requirement in policy for the DTU rounds, it is just a
daily check-in with the inmates on the unit. Records indicate that you have
regular contacts with the psychologist and psychiatrist in accordance with
policy. It is also noted that you have refused two recent out-of-cell sessions
with psychology and psychiatry. In your grievance you talk about adequate
help and time, but you are refusing to participate in the sessions offered to
you.

Ms. Bechtel reports that daily rounds are made on the DTU in accordance
with policy. There are no falsified entries in your ICAR's, DC-560's or the
logbooks. She further reports that she rings the PREA bell upon entrance to
the pod.

In regard to your statements about Ms. Bechtel sexually harassing you that
is an open PREA investigation and security is reviewing the situation.

This grievance is denied and considered frivolous based on the facts the
records indicate you are receiving services in accordance with policy. In
addition, your record also reflects a consistent pattern of exposing yourself
and sexually harassing the female staff to include Ms. Bechtel.

(Doc. 73-1 at 40, Final Appeal Decision).

[6] On May 23, 2016, Grievance No. 618411 was upheld on Final Review as
follows:

You state in your grievance that on 3/16/16 Ms. Bechtel denied you access
to the psychology/mental health. You state that this is most likely done out
of retaliation. An investigation was conducted regarding your allegations.
*(footnote continued on next page)*

Zamichieli filed PREA complaints at SCI-Huntingdon, SCI-Rockview, SCI-Greene and SCI-Mahanoy for either being forced to have some form of sex with female staff or masturbating for staff or being sexually touched by staff. Id.

Defendant Jacobson is a PREA investigation Officer and acting unit manager for the DTU/RHU. Id. Jacobson wanted to talk to Plaintiff about his lower tier housing request and about his previous claim of sexual abuse against Jamie Bechtel. Id. Plaintiff believed that Jacobson was trying to make a deal with him to withdraw his grievance and his request for a lower tier cell and that if he masturbated for her, he would get a lower tier cell. Id. Plaintiff claims that Jacobson had him masturbate for an hour and half in the RHU law library. Id.

On March 17, 2016, Plaintiff's PREA claims against staff, referred to Director Barnacle by the Chief Grievance Officer, (see Doc. 73-1 at 26), were denied as follows:

---

The record reflects that Ms. Bechtel makes daily rounds on the DTU in accordance with policy. The record reflects that you have not mentioned your concerns during your out of cell or to the PRC. The responses adequately address your concerns and there is nothing further to add. You have failed to provide any evidence to substantiate your claims. As stated, you have an opportunity to do better through this program and you are encouraged to do so.

(Doc. 73-1 at 30, Final Appeal Decision).

The Office of Special Investigations and Intelligence recently received your correspondence from the Secretary's Office on March 7, 2016.

Please be advised that your allegations against staff have been thoroughly investigated. Based on the findings of that investigation your allegations were unsubstantiated. If you have further questions pertaining to this matter, please refer them to the security office at the State Correctional Institution Mahanoy.

(Doc. 73-1 at 47).

Plaintiff's medical records indicate that on March 1, 4, 5, 7, 2016, a medical provider went to see Plaintiff and he refused treatment. (Doc. 73-3, Medical Records).

On April 1, 2016, Plaintiff was seen by PA Menghini in the infirmary for an overdose, stating that he took thirty-six (36) pills. Id. It was a mixture of all of his medications. Id. He had no complaints upon arrival. Id. He was in handcuffs and leg shackles. Id. He also had a spit guard on. Id. This was taken off. Id. He spoke with his jaw clenched but later was able to speak normally. Id. He was compliant with drinking the activated charcoal. Id. He spit up 5 pills which were barely dissolved. Id. He was monitored, and laboratory studies done. Id.

April 3, 2016, Plaintiff saw PA Menghini. Id. He wanted to know when he could leave the infirmary. Id. He did not have any complaints. Id. She told him that he would need to be evaluated by a physician and discharged. Id.

On April 4, 2016, Zamichieli was discharged back to the RHU. Id. On April 5, 2016, Zamichieli declined to get out of bed for sick call. Id. He told PA O'Brien to "go away". Id. On April 6, 2016, Plaintiff requested that his medications come in liquid form because on April 1, 2016, he tried to overdose by taking too many pills and now was not allowed pills. Id. On April 7, 2016, Zamichieli refused sick call. Id.

On April 8, 2016, Plaintiff requested his seizure medication be switched to a liquid form. Id. On April 9, 2016, Zamichieli told PA Menghini that he did not want his medications to be soaked in water. Id.  On April 11, 2016, Zamichieli refused to be seen. Id. He told PA O'Brien that he was going to the bathroom. Id. On April 13, 2016, he refused sick call with PA O'Brien. Id. On April 12, 2016, Zamichieli refused to get out of bed for sick call with PA O'Brien. Id. On April 15, 2016, he did not want his medications crushed and thought they could be causing side effects. Id. On April 21, 2016, refused sick call. Id. On April 24, 2016, he put in a sick call slip for eyeglasses and a growth on his nose. Id. However, he refused to be seen. Id.

Zamichieli's official grievance history from the Department of Corrections, indicates that between January 21, 2016 to April 20, 2016, he filed eighteen (18) grievances and none of them concerned medical care and

treatment administered by Defendant Menghini. (Doc. 73-4, Grievance History).

## IV. DISCUSSION

### A. Exhaustion

Defendants seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake,—— U.S. ——, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337 (2000).(explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57. "Of course, exhaustion applies only when administrative remedies are

'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. Ross v. Blake, —— U.S. ——, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' Id. at 1859-60."

Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. Notably, prison administration must also comply with the demands of the

system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Shifflett, 934 F.3d at 365.

Additionally, the PLRA strictly requires exhaustion prior to the filing of his complaint.  See Ahmed v. Dragovich, 297 F.3d 201, 209, n. 9 (3d. Cir. 2002); see also Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d. Cir. 2006) (non-precedential) ("[T]here appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").

As recognized by the court in Shifflett, DC-ADM 804 governs the grievance and appeals process in Pennsylvania corrections systems. DC-ADM 804 "provides a three-step process, with final review of grievances performed by the Secretary's Office [of Inmate Grievances and Appeals ("SOIGA") ]," and "a plaintiff must follow each of these steps to exhaust administrative remedies under the PLRA." Spearman v. Morris, 643 F. App'x 82, 85 (3d Cir. 2016) (citing Booth, 206 F.3d at 299; Jenkins v. Morton, 148 F.3d 257, 259 (3d Cir. 1988)) (emphasis in original).

Pursuant to DOC policy, DC-ADM 804, Section 1, a grievance related to inmate discipline/misconduct procedures will not be addressed through the Inmate Grievance process and must be addressed through policy DC-ADM 801, 'Inmate Discipline'. (Doc. 89-2 at 6). Under DC-ADM 801, "the inmate may appeal the informal resolution process." Id.  The appeal process is outlined in Section 5 and "requires the inmate to complete three levels of appeal." Id. The first level of appeal is to the Program Review Committee ("PRC") "for initial review within 15 calendar days of the hearing or informal resolution." Id. Next, the inmate "may appeal the PRC's decision to the institution's Facility Manager within 7 calendar days of receipt of the written decision by the PRC." Id. The "final level of appeal is to the Chief Hearing Examiner within 7 calendar days of receipt of the Facility Manager's decision." Id.

Plaintiff claims that Defendants were deliberately indifferent to his medical need for a "lower tier, lower bunk" status, as well as denying adequate medical treatment for Plaintiff's "seizures, hypertension" and "serious medical needs". (Doc. 47). In support of her motion for summary judgment, Defendant Menghini submits Plaintiff's grievance history which demonstrates that Plaintiff filed eighteen (18) grievances between January 21, 2016 and April 20, 2016. (Doc. 74-4 at 2-15). None of these grievances

concerned Defendant Menghini, Plaintiff's housing status or medical care. Id. Plaintiff does not refute this. Instead, in his brief in opposition to Defendant Menghini's motion, Plaintiff attempts to deflect from the issue of exhaustion by arguing that Defendant Menghini's brief in opposition should be stricken from the record for exceeding the fifteen-page limit permitted under M.D. Local Rule 7.8. (Doc. 81 at 2). Additionally, he cites to Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2008) and Ray v. Kertes, 285 F.3d 287, 293 (3d Cir. 2002), stating "failure to exhaust his administrative remedies is an affirmative defense that must be proven by Defendants." (Doc. 81 at 5).

Plaintiff's argument regarding the length of Defendant Menghini's brief is of no moment since this Court granted Defendant Menghini permission to exceed the page limit. (See Doc. 86). As to his legal argument that Defendants must prove exhaustion, the exhaustion records submitted by Defendant Menghini establish that Plaintiff filed eighteen (18) grievances between January 21, 2016 and April 20, 2016 and none of them concerned Defendant Menghini, Plaintiff's housing status or medical care. Plaintiff has offered nothing to dispute this. To that end, the PLRA mandates that prisoners exhaust all available administrative remedies prior to initiating a suit under §1983 for the deprivation of Constitutional rights. 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (finding that prisoners

must pursue their claims through prison channels prior to commencing related litigation in federal courts). The record is clear that Plaintiff did not exhaust his administrative remedies regarding his lower bunk status or medical care, prior to filing the instant action, and Defendants[7] are entitled to summary judgment.

## B. Merits

### i. First Amendment Retaliation Claim

Section 1983 provides a cause of action against any person who, under color of law, "subjects, or causes to be subjected, any citizen of the

---

[7] DOC Defendants argue a lack of personal involvement on their behalf, since as Plaintiff, himself, acknowledged, it is up the medical staff, not DOC Defendants, to determine cell classification. (See Doc. 73-2, Plaintiff's Deposition). Thus, even if Plaintiff had exhausted his claim relating to his bunk status, DOC Defendants would have been entitled to summary judgment as they were not involved in the medical decision of Plaintiff's bunk assignment and were justified in reasonably relying on the medical staff at the prison. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). See also Matthews v. Pennsylvania Department of Corrections, 613 F. App'x. 163, 170-71 (3d Cir. 2015) ("Although corrections officers were aware of Matthews's difficulty descending from his top bunk, using the stairs, and moving about on crutches, they were also justified in trusting that the medical professionals who regularly treated Matthews would recommend a bunk or cell reassignment if he needed one.")

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983 (2012). To prevail, Plaintiff therefore must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Zimmerlink v. Zapotsky, 539 Fed.Appx. 45, 48 (3d Cir. 2013) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)). That an adverse action occurs following protected activity does not suffice to establish a causal link between the two events. Lape v. Pennsylvania, 157 Fed.Appx. 491, 498 (3d Cir. 2005). Timing alone can suffice to establish a causal link, but the timing of the retaliatory action must be "unusually suggestive" of a retaliatory motive. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see Jalil v. Avdel Corp., 873 F.3d 701, 708 (3d Cir. 1989) (finding that a plaintiff-employee demonstrated a causal link by the circumstances that discharge followed rapidly, only two days later, upon employer's receipt of plaintiff's EEOC claim). A defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity. See Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir. 1984).

If Plaintiff makes out a *prima facie* case, the burden shifts to Defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to [a legitimate] penological interest." Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). If Defendants are able to meet this burden, they are entitled to have the claim dismissed. See Rauser, 241 F.3d at 334. "[C]ourts should afford deference to decisions made by prison officials, who possess the necessary expertise." Id.

On March 1, 2016, Plaintiff received Misconduct B882608 for sexual harassment and indecent exposure. Id. The Plaintiff claims his cell was searched after he received this misconduct, in retaliation for his filing of grievances. (Doc. 73-2, Plaintiff's Deposition). Plaintiff does not specify any grievance, in particular, just that Defendants "violated Plaintiff's 1st Amendment of U.S. Constitution Freedom of Speech when Plaintiff filed grievances," by "strip[ing] his cell of basic life necessities as a tool to gain compliance and prevent him from filing more grievances…" (Doc. 47 at 20). Thus, Plaintiff concludes that Defendants retaliated against him by strip searching his cell. Id.

The record before the Court, however, reveals that the action that prompted the cell search was Plaintiff's hoarding of medication and hiding it

- 25 -

in his cell. (See Doc. 73-1 at 33, Facility Manager's Appeal Response). Lt. Wall ordered Plaintiff's property and mattress removed for inspection to find the hidden pills. Id. Plaintiff does not refute this. In fact, Plaintiff, himself, admits to "intentionally overdos[ing] on medication pills" on April 1, 2016. (Doc. 47 at 14). Thus, the record demonstrates a rational, legitimate penological interest that satisfies the Defendants' burden that they would have made the same decision regardless of any (assumed) protected activity. Horn, 241 F.3d at 334. See also McLaughlin v. Hart, 2015 WL 13738991, at *12 (M.D. Pa. July 15, 2015) (prisoner's retaliation claim failed for the "straightforward reason: there were obvious legitimate penological bases underlying the decision" that he identified as retaliatory), *report and recommendation adopted by*, 2016 WL 921997 (M.D. Pa. Mar. 10, 2016), aff'd, 664 Fed. Appx. 135, 138-39 (3d Cir. 2016); Williams v. Gavins, 2015 WL 65080, at *11 (M.D. Pa. Jan. 5, 2015) ("the unchecked evidence indicates that the defendants had an adequate and independent basis for each of the challenged searches, and that these searches would have been undertaken regardless of whether the plaintiff was involved in litigation, as part of a legitimate penological interest, including routine cell searches and institution-wide shakedowns aimed at prison security"); Marshall v. Sobina, 2015 WL 1508388, at *8 (W.D. Pa. Mar. 31, 2015) (defendant corrections

officers "met their burden of demonstrating, by a preponderance of the evidence, that their actions would have been the same, i.e. they have come forward with 'some evidence' that the same decision would have been made...for a 'reason reasonably related to a legitimate penological interest.'"). Plaintiff has not produced any evidence to counter the legitimate, penological reason for the cell search on March 1, 2016.

Moreover, the Third Circuit has held that a single search of an inmate's cell is not considered sufficient to give rise to a First Amendment retaliation claim because a cell search is a "generally acceptable prison practice." Sims v. Vaughn, 189 Fed.Appx. 139, 141 (3d Cir. 2006); see also Hudson v. Palmer, 468 U.S. 517, 529 (1984) (holding that "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries"). Thus, regardless of the reason for the search, Plaintiff's claim does not allege adverse action that can give rise to a constitutional claim of retaliation under the First Amendment. Consequently, summary judgment will be granted in favor of the DOC Defendants on Plaintiff's First Amendment retaliation claim.[8]

---

[8] To the extent that Plaintiff also raises a retaliation claim under Title V of the ADA, (see Doc. 47), to prove a *prima facie* case of retaliation under the ADA,
*(footnote continued on next page)*

### ii. <u>Eighth Amendment Sexual Abuse Claim</u>

Plaintiff states that Defendant Jacobson violated his Eighth Amendment rights when she "coerc[ed] [him] into exposing his penis, masturbate in her presence and a recording camera." (Doc. 47 at 21).

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Sexual abuse of inmates or detainees may violate the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution").

In the Eighth Amendment context, a plaintiff must satisfy both an objective and subjective prong akin to excessive force claims. Ricks, 891 F.3d at 475. In that regard, the conduct in question must be "objectively, sufficiently intolerable and cruel, capable of causing harm and the official must have a culpable state of mind." Id. "Regarding the subjective prong, [the Court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations omitted).

---

the plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Plaintiff's ADA claim fails for the reasons set forth herein.

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, Civ. A. No. 17-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, Civ. A. No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); Washington v. Gilmore, Civ. A. No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

Plaintiff's amended complaint fails to state a claim for sexual abuse because it does not allege any direct physical contact with Jacobson or that Jacobson's conduct was even sexual in nature. Plaintiff does not allege that Jacobson touched him in any way, but only states that Jacobson allegedly watched "him masturbate in front of her" while she was "feet away." (Doc. 98 at 22). Without more, these facts are insufficient to meet the objective prong of an Eighth Amendment sexual abuse claim. Accord Ricks, 891 F.3d at 477 (noting that "objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline"); Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016); see also Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (finding that solicitation of a prisoner's masturbation, even under the threat of retaliation does not violate the Eighth Amendment); Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (affirming dismissal of Eighth Amendment claim where female prison employee asked the plaintiff "to have sex with her and to masturbate in front of her and other female staffers"), overruled on other grounds in Porter v. Nussle, 534 U.S. 516 (2002).

Thus, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment Sexual Abuse Claim.

### iii. **ADA and RA Claims**

Plaintiff claims that Defendants "caused [him] to be excluded from participation in programs, services, therapy, medical services, activities, exercise and denied access to services at SCI-Mahanoy which [he is] entitled to participate in due to [his] qualified disabilities of seizures, epilepsy, scoliosis (sic), hypertension and mental health diagnoses." (Doc. 47).

Plaintiff's ADA and RA claims will be considered together because "the substantive standards for determining liability are the same." Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019) (citation omitted). To prevail on his claims under Title II of the ADA and Section 504 of the RA, Plaintiff must show: (1) "he is a qualified individual with a disability"; (2) he "was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination"; (3) "by reason of his disability." Id. at 288–89; 42 U.S.C. §12133.

Assuming without deciding that Plaintiff was a qualified person with a disability, the record before this Court reveals that Defendants did not exclude Plaintiff from services, programs or activities based on his disability.

The second element requires Plaintiff to show that he "was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination." Furgess, 933 F.3d at 288–89. "Modern prisons provide

inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." Pa. Dep't of Corr. V. Yeskey, 524 U.S. 206, 210-213 (1998). To establish liability, Plaintiff must show that he has been denied "meaningful access" to prison programs. CG v. Pa. Dep't of Educ., 734 F.3d 229, 237 (3d Cir. 2013) (citing Alexander v. Choate, 469 U.S. 287, 301 (1985)).

Plaintiff argues that his housing on the top tier from January 20, 2016 to April 10, 2016, precluded him access to many programs and services that were available to other inmates, including the yard area, mental health care programs and educational programs. (Doc. 47). However, the record before this Court reveals that Plaintiff was offered to attend mental health programs and refused. Additionally, Plaintiff, himself, indicates that he refused to go to programs or yard because of his "fear of using staircase and falling having seizure." (Doc. 47). Plaintiff admits that he was offered an accommodation of being escorted by correctional officers, but was too fearful of walking down the steps handcuffed behind his back. Id. Thus, the record is devoid of evidence that Plaintiff was excluded from the prison's programs or services "be reason of his disability," Furgess, 933 F.3d at 288-89 and, instead,

Plaintiff missed out on opportunities to attend programs and services due to his own choice. Thus, the Plaintiff "was not treated worse because he was disabled. His complaint is that he was not given special accommodation." Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996). The only reason the Plaintiff was denied the ability to participate in programs and services was because he wanted to dictate how he would walk down the stairs, or where he should be housed in the prison, a requirement that neither the ADA nor the RA mandate. Thus, Defendants are entitled to summary judgment on Plaintiff's ADA and RA claims.[9]

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendant Menghini's motion for summary judgment and deny Plaintiff's motion for summary judgment. The Court will also grant DOC Defendants' motion for summary

---

[9] To the extent the Plaintiff raised claims against individual DOC Defendants, those claims are barred as a matter of law, "because they are not public entities subject to suit under the ADA or the Rehabilitation Act." Matthews v. Pennsylvania Dept. of Corrections, 613 F. App'x. 163, 169-70 (3d Cir. 2015) (citations omitted). And given that the Plaintiff is now incarcerated at a different institution—SCI-Phoenix—his remaining ADA and RA claims are now moot, as "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003)(citation omitted).

judgment on all claims, except Plaintiff's Fourth Amendment claim to bodily

privacy, which was not addressed by DOC Defendants.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 17, 2022**
17-1898-02